74 F.3d 967
 50 Soc.Sec.Rep.Ser. 18, 96 Cal. Daily Op. Serv. 538,
96 Daily Journal D.A.R. 874
Bonnie GOMEZ, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner, Social Security
Administration,* Defendant-Appellee.
 No. 94-35729.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 17, 1995.
Decided Jan. 26, 1996.
 
 Ralph Wilborn, Ralph Wilborn and Etta L. Wilborn, Eugene, Oregon, for plaintiff-appellant.
 Kathryn A. Warma, Department of Health and Human Services, Seattle, Washington, for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before: WALLACE, Chief Judge, D.W. NELSON and BRUNETTI, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Bonnie Gomez appeals the ruling of the district court affirming the decision of the Commissioner of the Social Security Administration (the "Commissioner") to deny disability insurance benefits and Supplemental Security Income disability benefits under the Social Security Act (the "Act"), 42 U.S.C. Secs. 401 et seq., 1381 et seq. Gomez argues that the district court erred in affirming the decision of the Administrative Law Judge ("ALJ"), which, she contends, was based on the improper discounting of the opinions of both an examining psychologist and a vocational expert. Gomez contends that she has met her burden of proving that she is presumptively disabled, or alternatively that the Commissioner has failed to meet her burden of proving that there exist jobs in the national economy which Gomez could perform. We affirm.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 On October 24, 1989, Bonnie Gomez filed an application for disability benefits, claiming disability due to osteoarthritis and depression. At the time, Gomez was forty one years old, with a high school education and past work experience as a nurse's aide, dishwasher, hospital housekeeper and adult foster caregiver. Beginning in August, 1989, Gomez's family physician, Dr. Kincade, treated her for neck pain and ordered her to stop working for a few months. Gomez did not work again until January, 1992, when she took a position as an office administrator.
 
 
 3
 From January, 1986, through March, 1992, Gomez was episodically diagnosed with and treated for depression by both Dr. Kincade and his nurse practitioner ("NP"), Debra Blaker. In March, 1992, NP Blaker diagnosed Gomez's depression as being in remission. However, in July, 1992, Gomez requested and was granted a reduction in her work hours due to job-related stress.
 
 
 4
 In connection with her disability claim, Gomez was ordered in May, 1991 to undergo a psychological examination conducted by Dr. Aho, a licensed psychologist. Dr. Aho diagnosed Gomez with mental impairments which markedly impacted her daily activities and ability to function socially. Dr. Aho recommended that Gomez be found eligible to receive disability assistance.
 
 
 5
 At the administrative hearing, the ALJ called a medical advisor to testify as to the severity of Gomez's impairments. She opined that Gomez was suffering from mental impairments resulting in slight to moderate restrictions in daily living and work-related activities, as well as in her ability to function socially.
 
 
 6
 On October 27, 1992, the ALJ denied Gomez's applications for benefits. She appealed the denial to the Appeals Council, where she submitted as additional evidence a reevaluation by Dr. Aho and an opinion by a vocational expert. In upholding the ALJ's decision, the Appeals Council found that this additional evidence did not affect the ALJ's conclusion. The district court affirmed the Commissioner's final order and dismissed Gomez's complaint, and this appeal followed.
 
 II. STANDARD OF REVIEW
 
 7
 This court reviews a district court's order affirming the Commissioner's denial of benefits de novo, Ramirez v. Shalala, 8 F.3d 1449, 1451 (9th Cir.1993), and is to affirm a denial of benefits if it is supported by substantial evidence and is based on the application of correct legal standards. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). Substantial evidence is such relevant evidence that, considering the record as a whole, a reasonable mind might accept as adequate to support a conclusion. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.1995).
 
 III. DISCUSSION
 A. Burden of Proof
 
 8
 Gomez bears the burden of proving her disability. In order to do so, she must establish that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity and that her impairment prevents her from performing her previous occupation. Hammock v. Bowen, 867 F.2d 1209, 1212 (9th Cir.1989).
 
 
 9
 The Commissioner found that Gomez had not met her burden because she did not have an impairment meeting or equalling any of the medical listings contained in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. Secs. 404.1520(d), 416.920(d). Specifically, the ALJ found that Gomez's physical impairments were not sufficiently severe, and that her mental impairments did not meet the requirements for Listing 12.04 Affective Disorders or 12.08 Personality Disorders. However, Gomez did establish that, given her physical impairments, she was unable to perform past relevant work. Thus the burden shifted to the Commissioner to show that there existed other jobs in the national economy which Gomez could perform. 20 C.F.R. Secs. 404.1520(f), 416.920(f). The ALJ found that the Commissioner carried this burden.
 
 
 10
 B. The Commissioner's Treatment of the Nurse Practitioner's Opinion
 
 
 11
 According to the ALJ, the observations of Dr. Kincade and NP Blaker indicated that Gomez was not disabled. The ALJ then concluded that these observations were entitled to greater weight than Dr. Aho's conclusion that Gomez was disabled and should be awarded benefits. Gomez argues that the ALJ erred in failing to distinguish between the opinions of Dr. Kincade and NP Blaker, and thus accorded NP Blaker's opinion more weight than was warranted. Gomez contends that Social Security regulations require the opinions of nurse practitioners to receive less weight than those of treating physicians or examining psychologists.
 
 
 12
 The Code of Federal Regulations distinguishes between those opinions coming from "acceptable medical sources" and those coming from "other sources." 20 C.F.R. Secs. 404.1513(a) and (e), 416.913(a) and (e). From this, 20 C.F.R. Secs. 404.1527 and 416.927 each set forth similar guidelines for the Commissioner to follow when weighing conflicting opinions from acceptable medical sources, while containing no specific guidelines for the weighing of opinions from other sources. This permits the Commissioner to accord opinions from other sources less weight than opinions from acceptable medical sources.
 
 
 13
 Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not nurse practitioners. 20 C.F.R. Secs. 404.1513(a)(1) and (3); 416.913(a)(1) and (3). Thus, Gomez argues that NP Blaker's opinions should be separated from those of Dr. Kincade, and not given as much weight as the opinion of Dr. Aho, an acceptable medical source.
 
 
 14
 Chart notes indicate that although Dr. Kincade did not personally examine Gomez any time after July, 1990, NP Blaker consulted with Dr. Kincade regarding Gomez's treatment numerous times over the course of her relationship with Gomez. NP Blaker worked closely under the supervision of Dr. Kincade and she was acting as an agent of Dr. Kincade in her relationship with Gomez. Her opinion was properly considered as part of the opinion of Dr. Kincade, an acceptable medical source. Thus, the ALJ did accord it appropriate weight and consideration under 20 C.F.R. Secs. 404.1527 and 416.927, as against the opinion of Dr. Aho, an examining, nontreating source.
 
 
 15
 Moreover, 20 C.F.R. Sec. 416.913(a)(6) states that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence," while later in that section the statute designates nurse practitioners as an "other source." Sec. 416.913(e)(3). While nowhere in the regulations is the term "interdisciplinary team" expressly defined, a plain reading of these sections taken together indicates that a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not.
 
 
 16
 C. The Commissioner's Treatment of Claimant's Vocational Expert Opinion
 
 
 17
 Gomez additionally argues that the Commissioner erred in finding that Gomez could perform other work in the national economy, inasmuch as, she contends, the Commissioner improperly discounted the opinion of a vocational expert she provided.
 
 
 18
 As part of her appeal of the ALJ's decision, Gomez submitted to the Appeals Council a report from a vocational expert obtained after the ALJ's decision. Although the Appeals Council affirmed the decision of the ALJ denying benefits to Gomez, this evidence is part of the record on review to this court. Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir.1993).
 
 
 19
 The Appeals Council considered the additional evidence submitted by Gomez and found that the conclusion of Gomez's vocational expert, that Gomez could perform no work available in the national economy, was of no effect because it was based on limitations which the ALJ had properly rejected. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert ... has no evidentiary value."). Thus, Gomez's contention that the Commissioner is bound to accept this evidence because it is uncontroverted is without merit.
 
 
 20
 While the burden was on the Commissioner to prove that there are other jobs existing in the national economy which Gomez could perform, the Commissioner was not required to fulfill this burden through the use of a vocational expert. We have interpreted the regulations to provide that the use of vocational experts is left to the Commissioner's discretion. 20 C.F.R. Secs. 404.1566(e), 416.966(e); Albrecht v. Heckler, 765 F.2d 914, 916 (9th Cir.1985).[1] At the most, the Commissioner need use a vocational expert only if there is an absence of other reliable evidence of the claimant's ability to perform specific jobs. Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir.1985).
 
 
 21
 Thus, while the ALJ called a vocational expert to testify at the hearing, he ultimately and properly relied solely on the medical-vocational guidelines in Part 404, Subpart P, Appendix 2, in finding that Gomez could perform other work in the national economy. Not only was the ALJ free to reject the testimony of his vocational expert, but in addition, the Appeals Council was also free to reject evidence produced by Gomez's vocational expert, evidence which was obtained after an adverse administrative decision.
 
 
 22
 Moreover, in rejecting this evidence, the Appeals Council is not required to make any particular evidentiary finding. While Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir.1989) requires that there be substantial evidence for rejecting the opinion of a vocational expert resulting from a hypothetical question propounded by claimant's counsel, such a requirement was imposed on a vocational expert called by the ALJ during the hearing. Here we are instead confronted with a post-hearing report supplied by a vocational expert solicited by the claimant alone.
 
 IV. CONCLUSION
 
 23
 We affirm the district court's decision, affirming the decision of the Commissioner of the Social Security Administration to deny benefits.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Pursuant to P.L. no. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Service, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Commissioner" throughout this opinion for the sake of convenience
 
 
 [1]
 These sections provide:
 Use of vocational experts and other specialists. If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist. 20 C.F.R. Secs. 404.1566(e), 416.966(e).