**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN TAYLOR,
                    *Plaintiff-Appellant,*

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,
                    *Defendant-Appellee.*

No. 10-35732

D.C. No.
3:09-cv-00278-MA

OPINION

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, Senior District Judge, Presiding

Submitted July 14, 2011*
Portland, Oregon

Filed October 27, 2011

Before: Harry Pregerson, Kim McLane Wardlaw, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Pregerson

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Ralph Wilborn, Wilborn & Wilborn, P.C., Green Valley, Arizona, and Tim Wilborn, Wilborn Law Office, P.C., Oregon City, Oregon, for the plaintiff-appellant.

Leisa A. Wolf, Assistant Regional Counsel, Social Security Administration, Office of the General Counsel, Seattle, Washington, for the defendant-appellee.

## OPINION

PREGERSON, Circuit Judge:

Steven Taylor appeals the denial of his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. Taylor claims he is disabled by thoracic spine and lumbar spine degenerative disc disease, a muscle disorder, a pain disorder, a panic disorder with agoraphobia, and a personality disorder. We have jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We reverse and remand.

## BACKGROUND

On March 29, 2006, the Administrative Law Judge (ALJ) issued a written decision finding Taylor not disabled as defined by the Social Security Act and denying Taylor's application. Taylor then submitted a request for review of the ALJ's decision to the Appeals Council.

With his initial request for review, Taylor submitted a psychiatric evaluation from September 7, 2006, and a medical source statement dated November 15, 2006, both from Dr. Jeffrey D. Thompson, M.D. Dr. Thompson's psychiatric evaluation was a follow-up from previous evaluations he conducted in 2001 and 2003. In his evaluation, Dr. Thompson noted Taylor's diagnosis of panic disorder with agoraphobia. Dr. Thompson's medical source statement found Taylor markedly limited in his ability to perform several work-related functions. Dr. Thompson also noted a "substantial loss" in multiple basic mental activities.

The Appeals Council initially dismissed as untimely Taylor's request for review, but then, upon a writ of mandamus from the district court, set aside its earlier action. The Appeals Council then considered additional medical evidence Taylor submitted, including opinions from Dr. Glen O'Sullivan,

M.D., Dr. Mark Greenberg, M.D., and Dr. Zakir Ali, M.D., all dating from July 2006 to June 2008. The Appeals Council concluded that all of the new information concerned a time after Taylor's insured date of December 31, 2004, and, therefore, did "not affect the decision about whether [Taylor] was disabled at the time [he] was last insured for disability benefits." The Appeals Council again denied Taylor's request for review, finding no basis for changing the ALJ's decision, thereby making the ALJ's written decision the final decision subject to judicial review.

## DISCUSSION

### I.

**[1]** As an initial matter, the Commissioner argues that the Appeals Council's decision denying Taylor's request for review is itself unreviewable by our court. When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner. *See Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) ("The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner." (citing 42 U.S.C. § 405(g))); *accord Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1994) (no jurisdiction to review Appeals Council's denial of review because "it is a nonfinal agency action" (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *Matthews v. Apfel*, 239 F.3d 589, 594 (3rd Cir. 2001) (same). Thus, we have no jurisdiction to review the Appeals Council's decision denying Taylor's request for review. That is, we may neither affirm nor reverse the Appeals Council's decision.

But Taylor is not arguing that the Appeals Council's decision to deny his request for review should be reversed. Rather, Taylor asks us to review the evidence submitted to the Appeals Council and credit the evidence as true because that

evidence was improperly rejected by the Appeals Council. Under these circumstances, Taylor asks us to remand to the district court with instructions to immediately award benefits. Contrary to the Commissioner's assertion, Taylor is not effectively asking for a "ruling that the Appeals Council must provide [a] detailed rationale whenever faced with new evidence." If he were, Taylor's request would be barred by *Gomez v. Chater*, where we held that "the Appeals Council [was] not required to make any particular evidentiary finding" when it rejected evidence from a vocational expert obtained after an adverse administrative decision. 74 F.3d 967, 972 (9th Cir. 1996).

**[2]** Instead, Taylor argues that his situation is like that in *Ramirez v. Shalala*, where we held that the Appeals Council improperly rejected a treating physician's opinion, and we remanded to the district court for an immediate award of benefits. 8 F.3d 1449, 1451-54 (9th Cir. 1993). In *Ramirez*, we held that we could consider the physician's opinion, which was rejected by the Appeals Council, to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error. *Id.* This, Taylor contends, is what he is requesting that we do: review Dr. Thompson's improperly rejected opinion in our overall review of the ALJ's final decision, not in review of the Appeals Council's decision denying Taylor's request for review. As the Commissioner concedes, we may do so. *See id.* at 1452; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

According to Taylor, the Appeals Council improperly rejected Dr. Thompson's psychiatric evaluation and medical source statement because the Appeals Council believed that those two opinions concerned Dr. Thompson's medical views after December 31, 2004, when Taylor's disability insurance coverage expired. Although Dr. Thompson's medical source statement is dated November 15, 2006, the medical source

statement indicates that Dr. Thompson's medical assessment encompassed the period from the date of disability onset in August 1999, around the time of Taylor's work-related injury, until the date of his evaluation. During the intervening five years between 1999 and 2004 when Taylor's insured coverage was in effect, Dr. Thompson examined Taylor twice; supervised Susan Wrona-Sexton, the licensed nurse practitioner who treated Taylor; and approved Wrona-Sexton's prescription of Taylor's medications. The Commissioner does not contest that Dr. Thompson's opinion concerns the status of Taylor's mental impairments and limitations before the expiration of his insured status. Moreover, "[t]his court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (internal quotation marks and citation omitted). Thus, if the Appeals Council rejected Dr. Thompson's opinion because it believed it to concern a time after Taylor's insurance expired, its rejection was improper.

It appears, however, that the Appeals Council did not consider Dr. Thompson's opinion at all. Taylor submitted Dr. Thompson's documents to supplement his original request for review of the ALJ's decision. This original request for review was denied because the Appeals Council believed the request had been filed late. The Appeals Council, however, set aside its earlier action upon a writ of mandamus from the district court. It was during the time between the ordering of the writ of mandamus and the Appeals Council's reconsideration of Taylor's case that Taylor filed the other documents from Dr. Greenberg, Dr. Ali, and Dr. O'Sullivan in support of his request for review. The Appeals Council referred only to those documents, not to Dr. Thompson's opinion, when it denied Taylor's request for review a second time. Somewhere in the shuffle, Dr. Thompson's psychiatric evaluation and medical source statement were lost, and the Appeals Council never considered them when it denied Taylor's request for review.

**[3]** Because Dr. Thompson's opinion concerned his assessment of Taylor's mental health since his alleged disability onset date in 1999, it related to the period before Taylor's disability insurance coverage expired in 2004, and before the ALJ's decision in 2006. Thus, Dr. Thompson's opinion should have been considered. *See* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence. *See id.*

**[4]** Accordingly, we remand to the ALJ for consideration of Dr. Thompson's psychiatric evaluation and medical source statement. *See Ramirez*, 8 F.3d at 1451-52. On remand, the ALJ must account for Dr. Thompson's opinion in the five-step sequential analysis required under 20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Even if Dr. Thompson's opinion is contradicted by other evidence in the record, as a treating physician, his opinion may not be rejected without "specific and legitimate reasons . . . supported by substantial evidence in the record.*" See Lester*, 81 F.3d at 830-31.

## II.

**[5]** The Appeals Council's failure to consider Dr. Thompson's opinion on review was not the only mistake made. The ALJ's previous five-step sequential analysis also contained several errors.

At step three, the ALJ failed to explain adequately his evaluation of the combined effect of Taylor's impairments, both severe and non-severe, and why they did not meet or equal any of those on the Listing of Impairments, 20 C.F.R. Part

404, Subpart P, Appendix 1, particularly listing 12.06, anxiety-related disorders, and listing 12.07, somatoform disorders. *See* 20 C.F.R. § 404.1523; *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

At step four, the ALJ's residual functional capacity determination was incomplete because it improperly discounted significant evidence in the record favorable to Taylor's position.

**[6]** The ALJ gave primacy to the opinions of non-treating, non-examining medical consultants, Dr. John Crosson, Ph.D., and Dr. Jay Goodman, M.D., and gave weight to the other medical opinions in the record only to the extent that they were consistent with those of the medical consultants. For example, the ALJ gave substantial weight to examining psychiatrist Dr. S. David Glass, M.D., whose opinion was generally consistent with Dr. Crosson's. But Dr. Glass also diagnosed Taylor with a pain disorder, and the ALJ rejected this diagnosis because it was inconsistent with Dr. Crosson's opinion. The ALJ rejected this diagnosis without giving a specific and legitimate reason supported by substantial evidence in the record. *See Regennitter v. Comm'r of Social Sec. Admin*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). Moreover, because their findings were inconsistent with those of the non-examining consultants, the ALJ characterized the medical opinion of Dr. Dee Christlieb, M.D., as "pro-disability reporting" and stated that Dr. David Hagie, D.O., was "focused on being a disability advocate" for Taylor, without providing specific and legitimate reasons for his claims. *Id.*; *see also Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.").

**[7]** The ALJ also erroneously stated that nurse practitioner Wrona-Sexton is not a medical source and discounted her evidence. Under the Social Security Act regulations, 20 C.F.R.

§ 404.1513(d)(1), nurse practitioners are listed among the examples of "medical sources."[1] To the extent nurse practitioner Wrona-Sexton was working closely with, and under the supervision of, Dr. Thompson, her opinion is to be considered that of an "acceptable medical source." *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

Moreover, the ALJ did not provide specific, germane reasons for discounting lay witness testimony from Taylor's wife, Wanda, and Taylor's friend, Elin Keffr. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d). Wanda Taylor's and Elin Keffr's testimony corroborated other evidence that indicated that Taylor would have difficulties sustaining full-time work and that he had marked physical and mental limitations. The ALJ did not find either of the lay witnesses not credible. "Nor under our law could the ALJ discredit [their] lay testimony as not supported by medical evidence in the record." *Bruce*, 557 F.3d at 1116.

**[8]** The ALJ also rejected Taylor's testimony about his symptoms insofar as it conflicted with the ALJ's residual functional capacity determination. But Taylor provided objective medical evidence of various physical and mental ailments, and the ALJ made no explicit finding of malingering. Thus, the ALJ had to support his credibility finding about Taylor's testimony with specific, clear and convincing reasons. *See Lingenfelter*, 504 F.3d at 1036. The ALJ failed to do so.

---

[1]Under Oregon law, to become a certified nurse practitioner a nurse must have an Oregon Registered Nurse license, obtain a master's degree or a doctoral degree in nursing, graduate from a nurse practitioner program specific to the category in which a nurse seeks certification, and fulfill multiple practice requirements. Nurse practitioners may acquire prescriptive authority. *See* Nurse Practitioner (NP) Certification Information, *available at* http://www.oregon.gov/OSBN/AdvPracLicensure.shtml.

For example, the ALJ gave substantial weight to Dr. Goodman's and Dr. Crosson's opinion that most of Taylor's pain was due to his habituation to narcotics medication. But beyond the opinions of the two non-treating consultants, there is no evidence in the record that Taylor's limitations were due to his methadone prescription, or that his several impairments would desist if he weaned himself off of methadone. And, while recognizing that Taylor's physical symptoms "may wax and wane," the ALJ held against Taylor two instances where he was able to function, even though his alleged disability involves attacks of muscle weakness or loss of muscle movement that come and go. This was error because "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ also noted that Taylor demonstrated excellent cognitive abilities during the hearing, despite his allegations of diminished mental capacity. However, the ALJ's personal observations of Taylor do not constitute substantial evidence for rejecting any of the opinions of Taylor's physicians who have found Taylor psychologically impaired. *See Montijo v. Sec. of Health & Human Servs.*, 729 F.2d 599, 602 (9th Cir. 1984).

**[9]** Finally, at step five, the ALJ failed to ask the vocational expert whether there was a conflict between her testimony and the Dictionary of Occupational Titles. *See* SSR 00-4p, at *2; *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Nothing in the rules relieves the ALJ of the responsibility of ensuring that there was no conflict, even if the vocational expert testified that Taylor could perform other jobs. Moreover, the ALJ failed to include all of Taylor's impairments in his residual functional capacity determination and, therefore, asked an erroneous hypothetical question of the vocational expert. "Because neither the hypothetical nor the answer properly set forth all of [Taylor's] impairments, the vocational expert's testimony cannot constitute substantial

evidence to support the ALJ's findings." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

## III.

Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009). Because Dr. Thompson's psychiatric evaluation and medical source statement were not considered by the Appeals Council or the ALJ, remand to the ALJ for further consideration is in order.

## CONCLUSION

[10] For the foregoing reasons, we REVERSE the district court's decision affirming the Commissioner's decision and REMAND to the ALJ for consideration of Dr. Thompson's opinion evidence and for reconsideration of Taylor's disability claims.

## REVERSED AND REMANDED.