Stacy WARNER, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security Administration, Defendant.

No. ED CV 11–907–DMG (E).

United States District Court, C.D. California.

April 26, 2012.

Laura E. Krank, Law Offices of Rohlfing and Kalagian LLP, Long Beach, CA, for Plaintiff.

AUSA–Office of U.S. Attorney, Los Angeles, CA, Timothy R. Bolin, SAUSA–Office of the U.S. Attorney, San Francisco, CA, for Defendant.

ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

DOLLY M. GEE, District Judge.

Pursuant to 28 U.S.C. section 636(b)(1)(B), the Court has reviewed the pleadings and other papers herein along with the attached Report and Recommendation of United States Magistrate Judge.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted as the Findings of Fact and Conclusions of Law herein; (2) Plaintiff's and Defendant's motions for summary judgment are denied; (3) the decision of the Commissioner of the Social Security Administration is reversed in part; and (4) the matter is remanded for further administrative action consistent with the Report and Recommendation.

IT IS FURTHER ORDERED that the Clerk shall serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment on the Plaintiff, counsel for Plaintiff and on the United States Attorney for the Central District of California.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CHARLES F. EICK, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dolly M. Gee, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05–07 of the United States District Court for the Central District of California.

PROCEEDINGS

Plaintiff filed a complaint on June 16, 2011, seeking review of the Commissioner's denial of benefits. Plaintiff filed a motion for summary judgment on December 21, 2011 ("Pl.'s Mot."). Defendant filed a cross-motion for summary judgment on January 10, 2012 ("Def.'s Mot"). The Court has taken both motions under submission without oral argument. *See* L.R. 7–15; "Order," filed June 17, 2011.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former cashier and retail department manager, filed applications for disability insurance benefits and supplemental security income on or about April 2, 2008, asserting disability since October 8, 2007, based on alleged depression (Administrative Record ("A.R.") 41, 59–60, 111–18, 150, 154). Plaintiff's insured status expires on December 31, 2012 (A.R. 23, 139).[1]

The Social Security Administration denied Plaintiff's applications initially and upon reconsideration (A.R. 64–80). Plaintiff then retained counsel and requested a hearing, which an Administrative Law Judge ("ALJ") conducted on February 23, 2010 (A.R. 38–63, 81–83). The ALJ examined the medical record and heard testimony from Plaintiff, a medical expert, and a vocational expert (A.R. 38–63). On April 16, 2010, the ALJ issued an unfavorable decision (A.R. 21–33). The ALJ found that Plaintiff suffers from severe "major depressive disorder, recurrent, not otherwise specified, with occasional psychotic features" and anxiety (A.R. 23–25 (adopting medical expert testimony at A.R. 53)). The ALJ nevertheless found Plaintiff retains the residual functional capacity to perform work at all exertion levels, limited to simple, repetitive tasks in a nonpublic work environment (A.R. 26–27, 30–31 (adopting medical expert's testimony at A.R. 54–55)). The ALJ deemed not credible Plaintiff's contrary testimony (A.R. 29). The ALJ conceded that Plaintiff cannot perform her past relevant work, but found that there exist other jobs that she could perform (A.R. 31–32 (adopting vocational expert testimony at A.R. 60–61)).

Plaintiff requested review of the ALJ's decision (A.R. 13–15, 17). Plaintiff's counsel submitted to the Appeals Council additional medical records from Plaintiff's treating psychiatrist. Dr. Liana Tanase, including a "Mental Work Restriction Questionnaire" dated June 14, 2010 (A.R. 15, 182–83, 241; *see also* A.R. 242–48 (questionnaire); A.R. 249–82 (additional records)). The Appeals Council purported to consider this additional evidence, but denied review:

> The Appeals Council has reviewed the treatment records from West End Family Counseling. The majority of the records are duplicative of the evidence found in Exhibit 7F [A.R. 212–40] and were already considered by the [ALJ]. Additionally, the Council has considered a medical source statement dated June 14, 2010, nearly [two] months after the decision, but finds it not persuasive.

(A.R. 2). The Appeals Council's denial of review made the ALJ's decision the final decision of the Administration for purposes of judicial review. *See Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1231–32 (9th Cir.2011) ("*Taylor*").

## STANDARD OF REVIEW

■ Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir.2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir.2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations

---

1. In order for a claimant to be eligible for disability insurance benefits, the claimant must establish that he or she became disabled prior to the expiration of his or her insured status. *See* 42 U.S.C. §§ 416(i)(2)(C), 416(i)(3)(A); 20 C.F.R. § 404.131(a).

omitted); *see also Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir.2006).

■ Where, as here, the Appeals Council considered additional material but denied review, the additional material becomes part of the Administrative Record for purposes of the Court's analysis. *See Harman v. Apfel,* 211 F.3d 1172, 1179–80 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000) (reviewing court properly may consider materials submitted to the Appeals Council when the Appeals Council addressed the materials in denying review); *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993) (*"Ramirez"*) ("although the Appeals Council declined to review the decision of the ALJ, it reached this ruling after considering the case on the merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to provide a basis for changing the hearing decision. For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council") (citations and quotations omitted); *Penny v. Sullivan,* 2 F.3d 953, 957 n. 7 (9th Cir.1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); *see generally* 20 C.F.R. §§ 404.970(b), 416.1470(b).

2. The record contains two groups of medical records from Dr. Tanase: (1) records provided to the ALJ which covered Plaintiff's treatment from December 2007 through January 2010 (A.R. 203–40); and (2) records provided to the Appeals Council which covered Plaintiff's treatment from December 2007 through June 2010 (A.R. 243–82). Since the records provided to the Appeals Council include those records that were provided to the ALJ, for ease of reference the Court cites to those records that were before the Appeals Council.

3. Clinicians use the GAF scale to report an individual's overall level of functioning. "The

## DISCUSSION

After reviewing the entire record, including the evidence presented for the first time to the Appeals Council, the Court finds that the Administration's decision is not supported by substantial evidence. Remand is appropriate under sentence four of 42 U.S.C. section 405(g).

### A. *The Medical Records Before the ALJ*

The only medical treatment records provided to the ALJ were from Dr. Tanase, who treated Plaintiff monthly for her depression and anxiety from December 17, 2007 (*i.e.,* two months after Plaintiff's alleged onset date) through at least June 7, 2010 (A.R. 203–40, 254–82).[2] Plaintiff reported having, *inter alia,* suicidal ideation, sleep problems, panic attacks, hair loss from pulling her own hair out, a history of depression, a family history of depression on her mother's side, and a history of childhood sexual and physical abuse from members of her family (A.R. 273, 275–76). Dr. Tanase diagnosed major depressive disorder, recurrent, and prescribed medications (A.R. 249–53, 255, 257, 259–61, 263–65, 267–68, 270–71, 273–75, 277–81). At the outset of treatment. Dr. Tanase assigned Plaintiff a GAF score of 45 (A.R. 276–77).[3]

scale does not evaluate impairments caused by psychological or environmental factors. A GAF between 41 and 50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." *Morgan v. Commissioner, 169 F.3d 595,* 598 n. 1 (9th Cir.1999); *accord Tagger v. Astrue,* 536 F.Supp.2d 1170, 1173 n. 4 (C.D.Cal.2008) (citing *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*) ("DSM–IV–TR") 34 (4th Ed. 2000 (Text Revision)).

In response to treatment, Plaintiff initially reported feeling "better" (A.R. 274), but by May 2008 Plaintiff reported feeling more emotional and anxious, such that she reportedly left her house only to grocery shop (A.R. 273). When Plaintiff ran out of her medications, she reported relapses of anxiety, depression, and suicidal ideation (A.R. 271).[4]

In November 2008, Plaintiff reported worsening depression and anxiety due to her daughter having attempted suicide and her daughter having been placed on a psychiatric hold (A.R. 267). In September 2008 and July 2009, Plaintiff reported calling a suicide hotline for her suicidal ideation (A.R. 261, 270). In July 2009, Plaintiff also reported increased stress, depression, and anxiety due to her son being in jail pending charges (A.R. 261). In August 2009, Plaintiff reported ongoing stress due to her son's incarceration, but stated that she was "doing better" with her medications and that her medications were "working" (A.R. 259–60). In October 2009, Dr. Tanase stated that Plaintiff suffered from "ongoing intermittent worsening depression and anxiety triggered by family" (A.R. 257). Dr. Tanase continued Plaintiff's medications (A.R. 257). In December 2010, Plaintiff declined any changes to her medications stating, "they are working fine" (A.R. 255).

At the hearing before the ALJ, Plaintiff testified that she believed her condition had gotten worse since 2007, explaining: "it's worse because sometimes I feel like I want to hurt myself, harm myself, and I feel nervous all the time, like I'm out of [inaudible] levels of my skin. And it makes me want to cut my wrist open" (A.R. 44). Plaintiff reported having threatened suicide and having been hospitalized for four days for mental illness just weeks prior to the hearing (A.R. 45–46).

---

4. Around this time, consultative examiner Dr. Jason Yang provided a Complete Psychiatric Evaluation for Plaintiff (A.R. 184–87 (June 8, 2008 evaluation)). Dr. Yang interviewed Plaintiff but did not review any of Plaintiff's medical records (A.R. 185). Plaintiff denied having any suicidal ideation and told Dr. Yang she felt "okay" (A.R. 186). Dr. Yang diagnosed depressive disorder, not otherwise specified (A.R. 186). Based on his interview of Plaintiff, Dr. Yang opined that Plaintiff would suffer only mild impairment in her ability to understand, remember, and perform complex tasks (A.R. 187). Dr. Yang stated that although he could not fully evaluate Plaintiff's persistence in an evaluation of this type, he identified no severe psychiatric factors that would significantly interfere with Plaintiff's ability to complete a normal day of work (A.R. 187). Dr. Yang acknowledged, however, that Plaintiff's symptoms could potentially impair the quality and quantity of Plaintiff's work (A.R. 187). Based on Plaintiff's behavior in the interview, Dr. Yang opined that Plaintiff's ability to interact with coworkers and colleagues would not be impaired (A.R. 187).

Contrary to Dr. Tanase's earlier finding (which Dr. Yang did not review), Dr. Yang assigned Plaintiff a GAF score of 65 (A.R. 187). "A GAF of 61–70 indicates 'some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Siegel v. Astrue*, 2009 WL 2365693, at *6 n. 6 (E.D.Cal. July 31, 2009) (quoting from *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994)); *see also* DSM–IV–TR 34 (same).

Similarly, in a Psychiatric Review Technique form dated June 30, 2008, non-examining State agency physician Dr. Kevin Gregg indicated that Plaintiff would suffer only mild difficulties in maintaining concentration, persistence, or pace (A.R. 188–98). Dr. Gregg agreed with another non-examining State agency physician that Plaintiff's depression appeared to be "non severe" (A.R. 201). Dr. Gregg reviewed Dr. Yang's evaluation, but there is no indication that Dr. Gregg reviewed any of Plaintiff's medical treatment records (A.R. 200–01).

On this record, the medical expert opined that Plaintiff would be capable of performing simple repetitive tasks in a non-public setting (A.R. 54–55; *see also* A.R. 26–27, 30–31 (ALJ adopting residual functional capacity for Plaintiff based on the medical expert's opinion)). The medical expert, who based his opinion on Dr. Yang's assessment, said that he did not have any records from Plaintiff's then-recent hospital stay (A.R. 54–55). Before stating his opinion, the medical expert asked Plaintiff if Dr. Tanase had ever spoken or written anything opining that Plaintiff was disabled (A.R. 53). Plaintiff responded that Dr. Tanase had never said anything to her, and she was not aware of what Dr. Tanase had written (A.R. 53).

## B. *Additional Medical Records Before the Appeals Council*

After the ALJ's adverse decision. Plaintiff's counsel provided to the Appeals Council additional treatment records from Dr. Tanase. Consistent with Plaintiff's testimony, the records show that when Plaintiff returned to Dr. Tanase in February 2010 Plaintiff reported being hospitalized for four days at a San Bernardino behavioral center for suicidal plans triggered by an assault by her own daughter (A.R. 253).[5] Dr. Tanase added medicine (seroquel) for Plaintiff's anxiety (A.R. 253).

In March 2010, Dr. Tanase expressed a diagnosis of "BPD" (borderline personality disorder). *See* A.R. 252; *see also* DSM–IV–TR 706–10 (describing the essential feature of borderline personality disorder as "a pervasive pattern of instability of interpersonal relationships, self image, and affects, and marked impulsivity"). Plaintiff had reported worsening depression and anxiety, and suicidal ideation resulting in a call to a suicide hotline based on a family incident (A.R. 252). Dr. Tanase increased Plaintiff's medications (A.R. 252). In April

2010, Plaintiff reported she was doing "slightly better," and Dr. Tanase increased Plaintiff's seroquel for anxiety at Plaintiff's request (A.R. 251).

Very shortly after the ALJ's adverse decision. Plaintiff reportedly was hospitalized from May 5 through May 10, 2010, for worsening depression with suicidal ideation precipitated by an upcoming court appearance regarding her daughter's assault case (A.R. 250). Plaintiff's medications reportedly were changed during her hospital stay (A.R. 250). Dr. Tanase discontinued certain of Plaintiff's medications and increased others at Plaintiff's request (A.R. 250). At Plaintiff's last documented visit to Dr. Tanase in June 2010, Plaintiff reported stress and panic due to her upcoming court appearance (A.R. 249). Dr. Tanase then characterized Plaintiff as a "high risk for suicidal gesture due to poor coping skills and current stress" and referred Plaintiff to a therapist (A.R. 249).

Dr. Tanase completed a "Medical Work Restriction Questionnaire" dated June 14, 2010 (A.R. 242–48). Dr. Tanase opined Plaintiff suffers from "major depression, recurrent severe/borderline personality disorder" based on her psychiatric evaluation and "medical necessity screening" (A.R. 242; *see also* A.R. 248 (listing same diagnosis)). Dr. Tanase indicated that Plaintiff has "marked" impairments in: (1) remembering "work like" procedures; (2) understanding and remembering short and simple instructions; (3) carrying out short and simple instructions; (4) making simple work-related decisions; (5) asking simple questions and requesting assistance; and (6) being aware of normal hazards and taking appropriate precautions (A.R. 242–43). Dr. Tanase indicated that Plaintiff has "severe" impairments in: (1) maintaining attention for two hour segments; (2) maintaining regular attendance

---

**5.** No records from any of Plaintiff's alleged  hospitalizations have been provided.

and being punctual; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or in close proximity to other people without being distracted by them; (5) completing a normal work day without interruptions from psychologically based symptoms; (6) accepting instructions and responding appropriately to criticism from supervisors; (7) getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (8) responding appropriately to changes in a work setting (A.R. 242–43). Dr. Tanase indicated that Plaintiff's prognosis is "poor" (A.R. 243; *see also* A.R. 248 (Dr. Tanase also describing Plaintiff's prognosis as "poor")). In a separate "Evaluation Form for Mental Disorders" requesting narratives, Dr. Tanase stated "see attached psychiatrist notes" (A.R. 245).

## C. The New Evidence Materially Undermines the ALJ's Decision

■ Where, as here, "new and material evidence is submitted" to the Appeals Council relating "to the period on or before the date of the [ALJ's] hearing decision," the Appeals Council must consider the additional evidence in determining whether to grant review. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). According to these regulations, the Appeals Council will grant review when the Council finds, after evaluation of the entire record including the new and material evidence, "that the [ALJ's] action, finding, or conclusion is contrary to the weight of the evidence currently of record." *See, id.* In Plaintiff's case, the Appeals Council considered the new evidence, but found, *inter alia*, that Dr. Tanase's medical source statement was "not persuasive" enough to warrant reviewing the ALJ's decision (A.R. 2).

Plaintiff argues that the Appeals Council erred by failing to state "specific, legitimate reasons" for rejecting Dr. Tanase's opinions (Pl.'s Mot., p. 6). Defendant argues that the Appeals Council, unlike the ALJ, need not state specific reasons for rejecting a treating physician's opinions (Def.'s Mot., pp. 2–3).

■■ Generally, a treating physician's opinions "must be given substantial weight." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988); *see Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion . . . This is especially true when the opinion is that of a treating physician") (citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631–33 (9th Cir.2007) (discussing deference owed to treating physician opinions); *see generally* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician's opinion is contradicted, as here, "if the ALJ wishes to disregard the opinion of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987) (citation, quotations and brackets omitted); *see Rodriguez v. Bowen*, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).

At least until recently, the requirement of stating "specific, legitimate reasons" for rejecting the contradicted opinion of a treating physician appeared to apply within the Ninth Circuit to the Appeals Council as well as to the ALJ. In *Ramirez*, the Appeals Council had considered a newly submitted medical report from the claimant's treating physician, but had denied review. The *Ramirez* Court stated "we consider the rulings of the ALJ and the Appeal Council." *Ramirez*, 8 F.3d at 1451.

The *Ramirez* Court held that the Appeals Council erroneously had failed to explain sufficiently the rejection of the treating physician's opinion which, when considered with other evidence in the record, established the claimant's disability. Specifically, the *Ramirez* Court stated:

> Neither the ALJ *nor the Appeals Council* gave *any* reason—let alone a "specific, legitimate" reason based on substantial evidence—for disregarding [the treating physician's] diagnosis.... We conclude that both the ALJ *and the Appeals Council* improperly disregarded [the treating physician's] opinion. We now examine the full record, including the supplemental material submitted to the Appeals Council, to determine what it reveals with respect to Ramirez's eligibility for benefits....

*Ramirez*, 8 F.3d at 1453–54 (internal footnotes omitted; emphasis added).[6]

District Courts within the Ninth Circuit routinely have applied *Ramirez* to impose on the Appeals Council the same requirements for rejecting newly submitted medical opinions as the courts impose on ALJs for rejecting previously submitted medical opinions. *See, e.g., Garcia v. Astrue*, 2011 WL 6149290, at *6 (C.D.Cal. Dec. 9, 2011) ("the Appeals Council's conclusory rejection of the opinion of plaintiff's treating physician, without providing *any* reason therefor, constitutes error"); *Rector v. Astrue*, 2011 WL 4048783, at *5 (E.D.Cal. Sept. 9, 2011) (court found no error because the Appeals Council had provided specific, legitimate reasons for rejecting the treating physician's opinions); *Luckett v. Astrue*, 2010 WL 3825703, at *9 (E.D.Cal. Sept. 28, 2010) (Appeals Council erred by failing to provide specific reasons for rejecting treating physician's opinion;

collecting district court cases supporting proposition that Appeals Council is held to same standards as ALJ for rejecting treating physician opinion); *see also Brent v. Astrue*, 2010 WL 3521788, at *5–6 (C.D.Cal. Sept. 7, 2010) (generally concluding that the Appeals Council's conclusory rejection of examining physician's opinion, without explanation, is contrary to Ninth Circuit law governing the weight to be given to doctors' opinions).

A recent Ninth Circuit decision appears to direct a different approach, however. In *Taylor*, as in *Ramirez*, the Appeals Council had denied review after receiving new opinions from the claimant's treating physician. The *Taylor* Court stated:

> Taylor [the claimant] is not effectively asking for a "ruling that the Appeals Council must provide [a] detailed rationale whenever faced with new evidence." If he were, Taylor's request would be barred by *Gomez v. Chater* [74 F.3d 967 (9th Cir.), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996) ("*Gomez*") ] where we held that "the Appeals Council [was] not required to make any particular evidentiary finding" when it rejected evidence from a vocational expert obtained after an adverse administrative decision. 74 F.3d 967, 972 (9th Cir.1996).

*Taylor*, 659 F.3d at 1232.

The *Gomez* case invoked by the *Taylor* Court had considered whether the Appeals Council was required to make an evidentiary finding before rejecting a post-hearing vocational expert opinion solicited by a claimant. *Gomez*, 74 F.3d at 972. The *Gomez* Court concluded that no evidentiary finding was necessary because the requirement of substantial evidence for rejecting a vocational opinion applied only to

---

**6.** The Circuit Courts are divided with respect to the proper scope of judicial review when the Appeals Council considers new evidence but denies further administrative review. *See*

*Mills v. Apfel*, 244 F.3d 1, 4 n. 2 (1st Cir. 2001), *cert. denied*, 534 U.S. 1085, 122 S.Ct. 822, 151 L.Ed.2d 704 (2002) (and cases cited therein).

a vocational expert *called by an ALJ during a hearing,* not to a post-hearing vocational expert report solicited by the claimant. *Id.* (citing *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir.1989)). By invoking *Gomez* in the manner in which it did, the *Taylor* Court evinced an understanding that the rule of *Gomez* applies not only to post-hearing vocational opinions, but also to post-hearing treating physician opinions, thereby excusing the Appeals Council from offering any explanation for rejecting such opinions.[7]

■ The *Taylor* decision thus calls into serious question whether District Courts in the Ninth Circuit should continue to impose on the Appeals Council the same requirements for rejecting newly submitted medical opinions as the courts impose on ALJs for rejecting previously submitted

medical opinions. Even so, according to *Taylor,* the reviewing court still must consider a post-hearing treating physician opinion as part of the court's "overall review of the ALJ's decision" (whether or not the Appeals Council itself considered the opinion.[8]) *Id.* This "overall review" properly examines whether the ALJ's decision is "supported by substantial evidence" and is "free of legal error." *Id.* (citing *Ramirez,* 8 F.3d at 1452).[9]

Following *Taylor's* directive in the present case, this Court has reviewed the ALJ's decision in light of the record as a whole, including the evidence submitted for the first time to the Appeals Council. For the reasons discussed below, the Court concludes that the ALJ's decision presently is not supported by substantial evidence.[10]

7. Although the *Taylor* Court also cited *Ramirez,* the *Taylor* Court did not acknowledge any inconsistency between *Ramirez* and *Gomez* in relation to the issue of whether the Appeals Council must explain the Council's rejection of newly submitted opinion evidence.

8. The *Taylor* Court determined that the Appeals Council did not consider the subject opinions before denying review. *Taylor.* 659 F.3d at 1232–33.

9. This review is a "sentence four" review under 42 U.S.C. section 405(g), not a "sentence six" review. *See, e.g., Boucher v. Astrue,* 2010 WL 2635078 (W.D.Wash. June 25, 2010); *Rodriguez v. Astrue,* 2010 WL 933947 (E.D.Wash. Mar. 9, 2010). A "sentence six" review considers whether to compel the Administration to accept "additional evidence" not previously "incorporate[d] ... into the record ..." 42 U.S.C. section 405(g). In the present case, the Administration already has incorporated into the record all of the evidence under review.

10. As this Court understands *Taylor,* it does not matter whether the ALJ's decision *when made* was supported by substantial evidence and was free from legal error *on the record then existing,* if later submitted evidence materially undermines the ALJ's decision. *Taylor* thus presents the possibility of the fol-

lowing scenario when the Appeals Council considers new evidence but denies review: (1) the ALJ's decision was supported by substantial evidence when made; (2) the ALJ's decision is the final decision of the Administration; and (3) the court does not review the Appeals Council's decision to deny further administrative review; but (4) the court nevertheless finds that the *ALJ's* decision was erroneous for want of substantial supporting evidence. One is tempted to suspect that some legal fiction must be at work to enable a court to discern a fact-based error in the ALJ's decision when no such error existed at the time the ALJ's decision was made. Perhaps the operative legal fiction inheres in the oft-recited principle that the court does not review the Appeals Council's decision to deny review. In the above scenario, only the Appeals Council had the newly submitted evidence; only the Appeals Council could have done something in response to the newly submitted evidence other than to deny review and thereby allow the uninformed ALJ's decision to stand as the "final" decision of the Administration. The unconceded reality, even under *Taylor,* seems to be that courts within the Ninth Circuit do in fact review whether the Appeals Council should have done something in the face of the new evidence other than to deny review. Indeed, the *Taylor* Court

Based on a review of the treatment records then available, the ALJ determined that Plaintiff's mental impairments were severe (A.R. 23–25). The ALJ did not further discuss Dr. Tanase's records; nor did the ALJ discuss Dr. Tanase's initial GAF score of 45 which, if accepted together with Dr. Tanase's medical source statement, would suggest a "disabling level of impairment". *See* A.R. 24 (acknowledging initial GAF score of 45 but providing no further discussion); *see also Castaneda v. Apfel*, 2001 WL 210175, at *3 (D.Or. Jan. 18, 2001) (doctor's assessment of a GAF of 45 "is indicative of a disabling level of impairment," where accompanied by doctor's opinion as to claimant's functional limitations); *but see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50764–65, 2000 WL 1173632 (Aug. 21, 2000) (Commissioner claiming that the GAF scale, alone, "does not have a direct correlation to the severity requirements in [the] mental disorder listings"); *McFarland v. Astrue*, 288 Fed.Appx. 357, 359–60 (9th Cir.2008) (unpublished decision discussing same).

As summarized above, in determining Plaintiff's residual functional capacity, the ALJ relied on the medical expert's opinion, which adopted the consultative examiner's opinion from an interview of Plaintiff conducted without the benefit of any of Plaintiff's medical records. The record at the hearing and before the medical expert did not include Dr. Tanase's reports that Plaintiff had suffered two psychiatric hospitalizations for her suicidal ideation. The information provided to the consultative examiner also did not include Plaintiff's reported struggles with suicidal ideation.

In light of Dr. Tanase's treatment records indicating that Plaintiff's depression and anxiety worsened over time (including two hospitalizations for suicide attempts that were unknown to the ALJ, the medical expert, or the consultative examiner), and the reported GAF score suggesting disability, the ALJ must reconsider the record as a whole, including Dr. Tanase's opinion that Plaintiff suffers from much greater limitations than the ALJ found to exist.[11] The fact that state agency physicians and the consultative examiner found lesser limitations (which were adopted by

itself reversed and remanded because, *inter alia*, "the Appeals Council never considered [Dr. Thompson's opinion] when it denied Taylor's request for review...." *Taylor*, 659 F.3d at 1233. Expressly faulting the Appeals Council, the *Taylor* Court stated that "Dr. Thompson's opinion should have been considered." *Id.* Similarly, the *Taylor* Court characterized "the Appeals Council's failure to consider Dr. Thompson's opinion on review" as a "mistake made." *Id.* Ultimately, the *Taylor* Court remanded, *inter alia*, "[b]ecause Dr. Thompson's psychiatric evaluation and medical source statement were not considered by the Appeals Council or the ALJ." *Taylor*, 659 F.3d at 1235. In *Taylor*, the ALJ could not have been at fault for having failed to consider Dr. Thompson's opinions; the ALJ never had the opportunity to consider Dr. Thompson's opinions. Only the Appeals Council (in the context of its decision to deny review) ever had the oppor-

tunity to consider Dr. Thompson's opinions. Realistically speaking, whenever a court considers evidence that was presented to the Appeals Council but not presented to the ALJ-as a court must do under *Taylor* (as well as under *Ramirez*)—then the court will be evaluating the propriety of the action/inaction of the Appeals Council. And the court will be doing so regardless of whether the court concurrently recites the principle that there exists "no jurisdiction to review the Appeals Council's decision denying [the claimant's] request for review." *Taylor*, 659 F.3d at 1231.

11. While an opinion post-dating an ALJ's decision can sometimes be suspect, *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir.1996), Dr. Tanase's post-decision opinion appears consistent with Dr. Tanase's treatment records and with Dr. Tanase's initial GAF score indicating disability.

the medical expert and then by the ALJ) does not alter the substantial evidence analysis because, *inter alia,* the state agency physicians and consultative examiner did not review some of the most significant of Dr. Tanase's records.

■ The circumstances of this case indicate that there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis. Therefore, remand is appropriate. *See McLeod v. Astrue,* 640 F.3d 881, 888 (9th Cir.2011); *see also INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir.1989); *see generally Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984).[12]

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) denying Plaintiff's and Defendant's motions for summary judgment; and (3) directing that Judgment be entered reversing in part the decision of the Commissioner and remanding the matter for further administrative action consistent with this Report and Recommendation.[13]

## JUDGMENT

IT IS HEREBY ADJUDGED that the decision of the Commissioner of the Social Security Administration is reversed in part and the matter is remanded for further

12. The Ninth Circuit's decision in *Harman v. Apfel,* 211 F.3d 1172 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000) (*"Harman"*) does not compel a reversal rather than a remand of the present case. In *Harman,* the Ninth Circuit stated that improperly rejected medical opinion evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman* at 1178 (citations and quotations omitted). Assuming, arguendo, the *Harman* holding survives the Supreme Court's decision in *INS v. Ventura,* 537 U.S. at 16, 123 S.Ct. 353, the *Harman* holding does not direct reversal of the present case. It is not clear that the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability if Dr. Tanase's opinion were fully credited. *See Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir.2010) (remand rather than reversal is appropriate where the medical opin-

ion in question does not identify a particular onset date). Further, there is no vocational expert evidence concerning whether there exists work that could be performed by a person having the limitations Dr. Tanase found to exist. Moreover, it is uncertain whether *Harman* has any application where, as here, the ALJ never had any opportunity to consider the subject medical opinion evidence.

13. In light of this recommended disposition, the Court need not and does not reach the issue of whether the Appeals Council erred by allegedly failing to state "specific, legitimate" reasons for rejecting Dr. Tanase's opinions. The Court also need not and does not reach any issue raised by Plaintiff which is not expressly discussed herein. The Court observes, however, that when the ALJ considers the record as a whole, the ALJ may reach a different credibility determination since the ALJ predicated several of the reasons for discounting Plaintiff's testimony on the limited nature of the medical record available at the time of the ALJ's decision. *See* A.R. 29–30 (ALJ's credibility determination). The available medical record is less limited now.

administrative action consistent with the Report and Recommendation of United States Magistrate Judge.